SIGNED THIS: June 21, 2007

_____
THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

IN RE:                                )
                                      )
LESLIE R. BROOKS and                  )    No. 05-83610
JO ANN M. BROOKS,                     )
                                      )
           Debtors.                   )

**O P I N I O N**

When the Debtors, Leslie and Jo Ann Brooks (DEBTORS), filed for Chapter 13 relief on July 21, 2005, they owned a 2000 Pace Arrow 34-foot motor home (the "Motor Home") that they valued at $70,000. Fifth Third Bank (the "BANK") held a lien on the Motor Home securing a claim that the DEBTORS estimated at $90,000. With respect to the BANK and the Motor Home, the Chapter 13 Plan filed by the DEBTORS provides as follows:

> Debtors hereby surrender to Fifth Third Bank any interest in the 2000 Pace Arrow Vision 34 foot motor home, and said creditor shall be allowed to file an unsecured claim in this proceeding representing a reasonable deficiency if any.

The Plan, confirmed without objection, requires the DEBTORS to pay $1,561 per month for 36 months for a total of $56,196. After paying one secured claim, the DEBTORS' attorney

fees and the Trustee's fees, the Trustee will pay allowed unsecured claims the estimated sum of $27,896. Timely filed unsecured claims total $62,022 with a projected distribution of 45%.

On July 23, 2005, the Bankruptcy Noticing Center mailed to the BANK the standard notice of the filing of the Chapter 13 case, informing it of the bankruptcy filing and that the deadline for non-governmental creditors to file a proof of claim was November 23, 2005, a copy of the Chapter 13 plan and an order regarding objection to confirmation. The notice of the filing, accompanied by a proof of claim form, provides as follows:

> If you do not file a Proof of Claim by the "Deadline to File a Proof of Claim" listed on the front side, you might not be paid any money on your claim against the debtor in the bankruptcy case. To be paid you must file a Proof of Claim even if your claim is listed in the schedules filed by the debtor.

On August 9, 2005, the BANK filed a Motion for Relief from the Automatic Stay to be allowed to repossess and foreclose its security interest in the Motor Home. A preliminary hearing on the motion was scheduled for September 12, 2005. About two weeks before the scheduled hearing, the BANK submitted an Agreed Order, signed by the DEBTORS' attorney, granting the motion and modifying the stay. The Agreed Order was entered on September 2, 2005, and the September 12 hearing was cancelled. Thereafter, the November 23, 2005 claim deadline passed without a claim filed by or on behalf of the BANK.

After the Motor Home was repossessed, at the BANK'S direction it was transported to Bay City Michigan for delivery to Bay City Auction. The Motor Home was sold at auction on June 20, 2006, for a gross sale price of $38,000. After applying the proceeds to the debt, the BANK was left with a deficiency balance of $58,736.99. Five months after the

2

sale and one year after expiration of the claim bar date, on November 16, 2006, the BANK filed a Proof of Claim for an unsecured debt in the amount of $58,736.99. If the claim is allowed, the distribution to unsecured creditors will drop from 45% to 23%.

The Chapter 13 Trustee objected to the BANK'S claim on the basis that it was not timely filed. In response to the objection, the BANK makes three main arguments:

1. The Chapter 13 Plan did not impose a time limit upon the BANK for filing a claim for a deficiency balance.

2. F.R.B.P. 3002 only requires unsecured creditors to file claims and the BANK was secured.

3. The BANK'S claim should be allowed under the informal proof of claim doctrine since its Motion for Relief from the Automatic Stay was filed before the claim bar date.

## ANALYSIS

**1. Claim filing principles.**

Disallowance of a claim is mandated where, subject to certain exceptions not applicable here, proof of such claim is not timely filed. 11 U.S.C. § 502(b)(9). By Rule, only unsecured claims must be filed to be allowed. F.R.B.P. 3002(a). Most courts hold, however, that a secured creditor in a Chapter 13 case must have a claim on file in order to receive payments from the trustee. *See In re Mehl,* 2005 WL 2806676 (Bankr.C.D.Ill. 2005). However, the claim filing deadline imposed by Rule applies only to unsecured claims, not secured claims. *Id.; In re Kreisler,* 331 B.R. 364, 384-85 (Bankr.N.D.Ill. 2005). That deadline, set forth in Rule 3002(c), is 90 days after the first date set for the first meeting of creditors, unless one of six enumerated exceptions applies. F.R.B.P. 3002 (c). The exceptions pertain to claims of governmental units, infants and incompetent persons, recipients of avoided

transfers, parties to executory contracts or unexpired leases, foreign creditors, and claims in Chapter 7 cases that began as no asset cases. None of the exceptions apply here.

The Rule concerning enlargement of time is inapplicable. Generally, a court has the authority and discretion to extend time limits for any act that "is required or allowed to be done at or within a specified period by these rules." F.R.B.P. 9006(b)(1). That general authority and discretion is eliminated, however, with respect to the time limits set forth in certain Rules, including Rule 3002(c), which may be extended only "to the extent and under the conditions stated in those rules." F.R.B.P. 9006(b)(3). Moreover, Rule 3002(c)(1), setting the claim date for claims of governmental units at 180 days after the order for relief, provides that the court may extend that deadline, for cause, upon motion filed within the 180 days. The Rule contains no similar provision for extending the claim deadline applicable to non-governmental unsecured creditors. Application of the principle of statutory construction *expressio unius est exclusio alterius* suggests that an extension of the 90-day deadline for non-governmental unsecured claims is not permitted, even upon motion filed within the 90-day period.

Indeed, the bar date for proofs of claim implemented by Section 502 and Rule 3002(c) is characterized as a strict statute of limitations. *In re Reliance Equities, Inc.*, 966 F.2d 1338, 1345 (10th Cir. 1992); *In re Bourgoin,* 306 B.R. 442, 444 (Bankr.D.Conn. 2004); *In re Windom,* 284 B.R. 644, 646 (Bankr.E.D.Tenn. 2002). Even the forgiving concept of excusable neglect, set forth in Rule 9006(b)(1), is eliminated as a basis for extending the claim date in Chapter 7, 12 and 13 cases. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 389-90, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993). Likewise, the doctrine of

4

equitable tolling has been rejected as a basis to extend the claim bar date. *In re Gardenhire*, 209 F.3d 1145 (9th Cir. 2000).

It should also be noted that the Rule 3002(c) claim bar date is the same in Chapter 12 and 13 cases as it is in Chapter 7 cases. The same early date is used despite the fact that the administration of Chapter 12 and 13 cases ordinarily occurs over a much longer time frame, three to five years, than a Chapter 7 case. It often occurs that a Chapter 13 plan will pay large secured claims first before any distribution to nonpriority unsecured creditors who may only receive payments in the last few months of the plan. Thus, the claim date cannot be said to be premised upon a Chapter 12 or 13 trustee's "need to know," by the 90th day after the first meeting, what unsecured claims are allowed. The drafters could have elected to use a more generous claim filing period for Chapter 12 and 13 cases, but did not choose to do so. The bar date for claims is simply a hard and fast deadline that applies without regard to the particularities of any individual case.

**2.  *In re Greenig.***

The Seventh Circuit has gone so far as to hold that a bankruptcy court does not have the power to allow an untimely proof of claim beyond the enumerated exceptions of Rule 3002(c). In *Matter of Greenig,* 152 F.3d 631 (7th Cir. 1998), involving a combined appeal from two related Chapter 12 cases, United Feeds ("UF") held a joint claim against each debtor arising out of a prepetition judgment. The Chapter 12 plans expressly provided for UF, as an unsecured creditor holding an allowed claim in the amount of $126,766.43, to be paid a fixed percentage of that claim. The plans were confirmed, but UF failed to file a proof of claim and the deadline for doing so expired. Approximately one year later, UF filed a

5

motion for leave to file a late proof of claim. The bankruptcy court granted the motion, but the district court reversed.

Affirming the district court, the Seventh Circuit rejected UF's argument that the terms of a confirmed plan may circumvent the requirement that a proof of claim must be timely filed. After recognizing that untimeliness warrants disallowance of a claim under Section 502(b)(9), the court considered the effect of Rule 9006(b)(3) in combination with Rule 3002(c) and its five exceptions.[1]

> Unless one of these five exceptions applies, the 90-day time limit is an absolute bar for Chapter 12 cases: "The court may enlarge the time for taking action under [Rule] ... 3002(c) ... *only* to the extent and under the condition stated in [that rule]. Fed. R. Bankr.P. 9006(b)(3) (emphasis added).
>
> It is undisputed that unfortunately UF did not file its proof of claim within the 90-day limit set forth in clear and unambiguous language in Rule 3002(c), and the parties agree that none of the exceptions to 3002(c) applies. Therefore, considering that 11 U.S.C. § 502(b)(9) bars untimely proofs of claims where none of the 3002(c) exceptions apply, we hold that UF's claim is barred.

*Greenig*, 152 F.3d at 634. The court concluded that a bankruptcy court is not vested with the equitable power to allow an untimely claim for any reason other than the stated exceptions in Rule 3002(c). *Id.* at 635.

The BANK attempts to distinguish *Greenig* on the basis that it involved a Chapter 12 case, not a Chapter 13 case. The Bankruptcy Rule construed in *Greenig*, however, Rule 3002(c), by its terms applies in Chapter 13 cases as well as Chapter 12 cases. *Greenig* applies with equal force in this Chapter 13 case. Rule 3002(c) does not apply in Chapter 11 cases,

---

[1] A sixth exception wasn't added until the Interim Rules were adopted to implement changes made by the 2005 amendments enacted by BAPCPA.

however, so the court's opinion in *In re Green,* 180 B.R. 514 (Bankr.C.D.Ill. 1995), *rev'd,* 188 B.R. 982 (C.D.Ill. 1995), relied on by the BANK but involving a Chapter 11 case, is distinguishable on that basis.[2]

The BANK also argues that the confirmed Plan, binding on the DEBTORS and their creditors, which did not set a deadline for it to file its deficiency claim, trumps the Rule that establishes the claim deadline. This very argument was squarely rejected by the Seventh Circuit in *Greenig* when it affirmed the district court's reversal of the bankruptcy court on that basis. The fact that the DEBTORS' Plan, which does not purport to extend the claim bar date, provides that the BANK will have an unsecured deficiency claim, does not change the claim filing rules or relieve the BANK of the need to follow them.

**3. Rule 3002 applies to undersecured creditors.**

The BANK next argues that it was an undersecured creditor, not an unsecured creditor, to whom the Rule 3002(c) deadline does not apply. The BANK relies upon Rule 3002(a)'s reference to "[a]n unsecured creditor . . . must file a proof of claim . . . ," contending that undersecured creditors are not covered by this provision. The lack of merit to this argument has long been established. *See Matter of Burrell,* 85 B.R. 799, 800-01 (Bankr.N.D.Ill. 1988) (Ginsberg, J.) (creditor with unsecured deficiency claim must file timely proof of claim pursuant to Rule 3002(a)).

Fundamentally, the BANK'S position that Rule 3002(a) does not apply to an undersecured creditor conflates the claim filing requirement with the bifurcation process of Section 506(a), which is entirely separate. A proof of claim constitutes *prima facie*

---

[2]Rule 3003 governs claims in Chapter 11 cases.

7

evidence as to the validity and the total, unbifurcated amount of the debt owed by the debtor. *In re Hudson,* 260 B.R. 421, 435-36 (Bankr.W.D.Mich. 2001); *In re Duggins,* 263 B.R. 233, 238 (Bankr.C.D.Ill. 2001). If no objection is filed, the amount of the debt stated in the proof of claim stands as the allowed amount of the creditor's claim without any judicial order. The determination of the amount of the secured component of an undersecured claim, however, requires judicial action. *In re Bennett,* 312 B.R. 843, 847 (Bankr.W.D.Ky. 2004); *In re Hill,* 304 B.R. 800, 804 (Bankr.S.D.Ohio 2003).

Where a debtor's Chapter 13 plan proposes to retain a creditor's collateral, bifurcation usually occurs as part of the plan confirmation process, although it may also occur upon motion filed pursuant to F.R.B.P. 3012. Where a plan surrenders collateral, the determination of the exact amount of an unsecured deficiency claim is ordinarily tied to sale of the property outside of bankruptcy. That does not mean, however, that an undersecured creditor may ignore the bar date, wait however long it takes to sell its collateral, and then file a deficiency claim whenever it gets around to it.[3]

The fact that the sale of the Motor Home did not occur until months after the claim bar date expired, and that the BANK did not know the exact amount of its deficiency until then, does not work to the BANK'S advantage. There is no exception to the bar date for unliquidated deficiency claims. Rule 3002 and its claim filing deadline apply equally to the

---

[3] It is worth noting that the BANK was put on notice by the DEBTORS, in the Plan and in the schedules, of the DEBTORS' belief that the motor home was worth substantially less than what was owed. The BANK itself, in its stay relief motion, alleged the BANK'S belief that the DEBTORS had no equity in the motor home. Thus, the BANK had information and belief that it was undersecured well within the period for filing unsecured claims. The application of Rule 3002(c) does not depend, however, on the creditor's state of mind; it applies even to creditors who believe they are oversecured.

8

unsecured component of an undersecured claim as well as to entirely unsecured claims. Notwithstanding the inflexibility of the claim filing deadline, amendments to claims are liberally allowed. *In re Xpedior Inc.,* 325 B.R. 392, 397 (Bankr.N.D.Ill. 2005). For timeliness purposes, an amended proof of claim relates back to the date the original proof of claim was filed. *In re Tessier,* 333 B.R. 174, 176 (Bankr.D.Conn. 2005).

So what is a potentially undersecured creditor to do when faced with a Chapter 13 plan proposing to surrender its collateral? An undersecured creditor should file, within the bar date for unsecured claims, a proof of claim. The claim may be filed as fully secured or, alternatively, the amount of the unsecured component may be estimated or may simply be shown as undetermined. When the collateral is subsequently liquidated and the deficiency determined, the creditor may file an amended claim for the then-quantified unsecured amount. The amended claim relates back to the timely filed claim and will not be objectionable on the basis of timeliness. Even creditors who believe themselves to be safely oversecured may file a cautionary claim for a potential deficiency, thus protecting themselves against that eventuality. If it turns out that no deficiency is realized, the cautionary claim may be withdrawn.[4]

Where a timely claim filed by a creditor to whom collateral is surrendered is objected to because it is filed as secured, or because the amount of the unsecured

---

[4]The case at bar does not involve a situation where a plan proposes to pay a creditor's secured claim in full, and then later, after the claim bar date expires, is amended to strip-down the claim or to provide for surrender. Such a situation raises due process concerns as to whether a creditor whose plan treatment did not require it to file a claim within 90 days of the first meeting, finds itself subject to that requirement on an after-the-fact basis, too late to file a timely unsecured claim. Under such circumstances, there may well be cause for a "lack of due process exception" to Rule 3002(c). Alternatively, where a claim is not "provided for" in time for the creditor to file a timely proof of claim, it may not be subject to discharge. *See U.S. v. Meyer,* 2004 WL 2203403 (N.D.Ill. 2004).

component is not specified, courts will ordinarily give the creditor a reasonable amount of time to sell the collateral and file an amended claim for the unsecured deficiency. Since a timely claim for the debt is already on file, Rule 3002(c) has been satisfied and is no longer a concern. An amended claim may thereafter be filed after expiration of the original 90-day deadline without running afoul of Rule 3002(c).[5]

**4. Informal proof of claim doctrine.**

The BANK also relies upon the informal proof of claim doctrine, contending that its Motion for Relief from the Automatic Stay, filed before the claim bar date, should be treated as a timely filed informal Proof of Claim. This doctrine, equitable in nature, permits a court to declare that a creditor who failed to file a timely proof of claim will nevertheless be treated as if it had done so, if warranted by the equities of the case. Those courts that recognize the doctrine, usually ascribe to it a five-part test, as follows:

1. the informal proof of claim must be in writing;
2. the writing must contain a demand by the creditor on the debtor's estate;
3. the writing must express an intent to hold the estate liable for the debt;
4. the writing must be filed with the Bankruptcy Court; and
5. based on the facts of the case, it must be equitable to allow the claim.

*E.g., In re Reliance Equities, Inc.,* 966 F.2d 1338, 1345 (10th Cir. 1992). The informal proof of claim doctrine must not be used to prejudice other creditors. *In re Hall,* 218 B.R. 275 (Bankr.D.R.I. 1998).

The BANK contends that the informal proof of claim doctrine survived *Greenig's* proscription against extensions of the claim bar date for any equitable consideration, citing

---

[5] There is always a concern, of course, that amended claims not be filed so late in the case that payment is not feasible. This concern is properly addressed by courts on a case-by-case basis by setting reasonable deadlines within which creditors must file amended claims for any unsecured deficiency.

*In re Harris,* 341 B.R. 660 (Bankr.N.D.Ind. 2006) and *In re Gonzalez,* 295 B.R. 584 (Bankr.N.D.Ill. 2003). In *Harris,* following the implementation of electronic filing, a credit union erroneously filed a proof of claim in a previously dismissed case filed by the same debtor. Because of a scrivener's error the claim was prepared with the caption of the earlier case and then electronically filed under that case number. After the credit union realized its error, it filed a proof of claim in the correct case, but by that time the bar date had passed. The Chapter 13 trustee objected to the claim as untimely. In response, the credit union relied on the informal proof of claim doctrine, arguing that its claim, filed in the wrong case but within the applicable bar date, should be deemed to be an informal proof of claim to which its later, untimely claim could relate back.

After noting that the Seventh Circuit had previously recognized the concept of an informal claim, Judge Grant reviewed several Seventh Circuit opinions that criticized the concept, including *Greenig* which explicitly rejected the notion that a bankruptcy judge has the equitable power to allow a late filed claim. Reasoning that although the informal proof of claim doctrine, wholly equitable in nature, was not expressly abrogated in *Greenig,* it was gutted, Judge Grant granted the trustee's objection and denied the credit union's untimely claim. The court concluded that the doctrine, to the extent it remains viable at all, must be severely limited since "[a]ny other approach would risk allowing equitable exceptions to swallow the rule, rendering the claims bar date potentially meaningless." 341 B.R. at 664 (citing *Matter of Stavriotis,* 977 F.2d 1202 (7th Cir. 1992)).

Judge Grant expanded his reasoning in *In re Fink,* --- B.R. ----, 2007 WL 1017313 (Bankr.N.D.Ind. 2007), a case in which a creditor sought to have a motion for relief from

11

the automatic stay or a complaint to determine dischargeabilty treated as an informal proof of claim. After again thoroughly reviewing the opinions of the Seventh Circuit on late claims and amendments to claims, Judge Grant reiterated that the weight of Seventh Circuit authority militates toward a narrow construction of the informal proof of claim doctrine. *See Greenig, supra; Matter of Stoecker,* 5 F.3d 1022 (7th Cir. 1993) (defining "informal proof of claim" as "incomplete" proof of claim which creditor was allowed to amend by providing omitted documentation); *Matter of Plunkett,* 82 F.3d 738, 741 (7th Cir. 1996) (post-bar date efforts to amend claims should be closely scrutinized); *Holstein v. Brill,* 987 F.2d 1268, 1270-71 (7th Cir. 1993); *Matter of Stavriotis,* 977 F.2d 1202, 1204 (7th Cir. 1992) (post-bar date amendment of claim denied, criticizing "late amendments which are primarily used as a back-door route to secure bar-date extensions"); *Matter of Unroe,* 937 F.2d 346 (7th Cir. 1991) (late-filed claims disrupt orderly discharge and should generally be barred).

Criticizing the ad hoc manner in which the informal proof of claim doctrine has developed, given *Greenig's* firm admonition against equitable extensions, and in light of the weight of Seventh Circuit authority characterizing the bankruptcy claim bar date as a firm statute of limitations, Judge Grant reasoned that the doctrine should be limited to situations where the creditor made a filing for the purpose of asserting a claim.

> Trimmed back to something more closely approximating the doctrine's original shape, an informal proof of claim is a defective claim. In other words, it is an effort to assert a claim against the bankruptcy estate which, usually for technical reasons, fails to fulfill the required formalities. *American Classic Voyages*, 405 F.3d at 132; *Waterman & Assoc.,* 227 F.3d at 608-09; *Stoecker,* 5 F.3d at 1028. It should not be found in a masquerade in which some other type of relief is sought and then subsequently unmasked to reveal what is argued to have been a proof of claim all along. This is

> especially so when the filings have been made by sophisticated law firms and experienced bankruptcy practitioners. It is one thing to treat filings made by pro se creditors who may not understand the bankruptcy process with a degree of latitude – in precisely the same way that the pleadings filed by pro se litigants are broadly construed so as to preserve the controversy for a disposition on the merits. It is quite another thing, however, when those filings come from attorneys. *Outboard Marine,* 386 F.3d at 828. They are held to a higher standard. *See, Matter of Maurice,* 69 F.3d 830, 834-35 (7th Cir.1995). Attorneys, particularly experienced bankruptcy practitioners, are expected to know the difference between motions and objections and adversary proceedings and claims, and they are expected to file the appropriate thing at the appropriate time.
>
>        \* \* \*
>
> A permissible amendment must begin with the proposition that the avowed purpose of the original submission was an attempt to file a proof of claim; if so, then deficiencies or shortcomings in the original filing may be corrected. The court should not begin with a filing that was consciously designed to serve one purpose and then find within that document a different purpose altogether, thereby legitimizing an otherwise untimely claim.
> Properly confined, the informal claim doctrine can be applied liberally in order to honor the substance of the creditor's actions – the genuine attempt at filing a proof of claim – rather than allowing technical details of form to thwart the effort.

2007 WL 1017313 at \*5-6. The court held that neither the creditor's motion for relief from stay nor the adversary complaint to determine dischargeability, filed for different purposes, qualified as an informal proof of claim. In so holding, the court rejected the creditor's argument that an informal claim arises whenever a creditor makes a filing that asserts a claim against the debtor and an intent to hold the debtor liable.

This Court agrees with the reasoning and the result reached by the court in *Fink* which, in this Court's view, fairly reflects the tenor of the bulk of the late claim and amended claim opinions issued by the Seventh Circuit including, most pertinently, *Greenig.* Virtually every pleading filed by a creditor in a bankruptcy case contains allegations that

13

identify the creditor as holding a claim and seeking payment or other enforcement of rights. Allowing stay relief motions and other pleadings to be treated as informal claims would emasculate the claim filing requirement and the accompanying bar date.

Adopting the BANK'S position would effectively create a new exception to the bar date of Rule 3002(c), that any creditor that has filed, before the claim deadline, a motion or adversary complaint that asserts its debt may ignore the bar date and thereafter file a formal claim at any time during the case. Allowing such exceptions would be tantamount to throwing sand into the gears of the bankruptcy engine. Neither would it be helpful to attempt to draw artificial distinctions that would allow only certain motions or complaints to be treated as informal claims – only those, for example, that allege the existence of an unsecured claim and a desire by the creditor to have it paid in the bankruptcy case. Such arbitrary line-drawing, based upon the happenstance of whether a pleading filed for an unrelated purpose has the aroma of a proof of claim, would, in this Court's view, be absurd. *See Burrell,* 85 B.R. at 802 (rejecting informal proof of claim argument by IRS based upon "the serendipity that entirely by accident it happened to serve a notice of deficiency on the debtor during the claims period").

No one disputes that a bar date for claims is necessary to the efficient functioning of the bankruptcy system. Strict adherence to a common deadline promotes fairness among all creditors. Rule 3002 is entirely egalitarian – it applies equally to all unsecured claims. Creditors are given notice of the necessity for filing a timely proof of claim and the consequences of not doing so. Large creditors, such as the BANK, surely have institutionalized procedures to ensure that a timely claim is filed whenever a bankruptcy notice is

received. Any erosion of the strict enforcement of the claim bar date would be unfair to those creditors who follow the rules and file timely claims, and would also tend to lead to a troublesome reduction in the incentive for creditors to follow the claim filing rules, and a corresponding increase in late claim litigation. A more slippery slope is difficult to imagine.[6]

The BANK also relies upon *In re Gonzalez,* 295 B.R. 584 (Bankr.N.D.Ill. 2003), involving a Chapter 13 case where the court deemed a creditor's objection to confirmation of the plan to be an informal proof of claim. The primary focus of the *Gonzalez* opinion is valuation of a used van and application of the Supreme Court's opinion in *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). As a preliminary issue, the court raised, *sua sponte*, the fact that the creditor had not filed a claim until eight days after the bar date expired, and that a secured creditor's failure to file a proof of claim ordinarily "would obviate any need to consider the creditor's valuation objection." 295 B.R. at 588. It appears that the court incorrectly assumed that the Rule 3002(c) bar date applies to the secured component of an undersecured claim so that a creditor must have a claim on file, *before the bar date*, in order to have an allowed secured claim that could be paid through the plan.[7] With this premise, the court determined that the creditor's previously filed objection to confirmation should be treated as an informal proof of claim thereby giving the court a basis to resolve the valuation dispute. However,

---

[6]The rule that a claim is a claim and another pleading isn't has the singular advantage of near absolute certainty, a highly valued commodity in any legal proceeding, and particularly so in the heavy volume world of bankruptcy.

[7]This Court disagrees and has held that proof of a secured claim is not subject to the bar date for unsecured claims. *In re Mehl,* 2005 WL 2806676 (Bankr.C.D.Ill. 2005).

15

Case 05-83610   Doc 50   Filed 06/21/07   Entered 06/21/07 17:00:54   Desc Main
                        Document      Page 16 of 19

the court hedged on that ruling by stating an alternative basis, that the creditor's untimely proof of claim "stands without objection . . . [as] an allowed proof of claim in this case," suggesting a different result may have occurred if an objection had been raised. 295 B.R. at 589. The *Gonzalez* opinion includes no mention of *Greenig*. In this Court's view, the *Gonzalez* court's reasoning and ruling regarding the informal proof of claim doctrine is contrary to *Greenig* and other Seventh Circuit authority and must be disregarded.

The informal proof of claim doctrine is largely a dead letter in the Seventh Circuit since *Greenig*. As indicated in *Fink*, its remaining utility is limited to situations where a document is filed within the bar date, that is intended to be a proof of claim but is somehow defective or incomplete, and is then permitted to be corrected or completed after the bar date. The BANK'S motion for relief from the automatic stay does not fall within the doctrine's limited scope.

**5. Unsecured deficiency claim is prepetition debt.**

The BANK makes two other arguments that are difficult to take seriously. The BANK contends that since it did not liquidate its collateral and establish its deficiency until well after the petition date, its unsecured deficiency claim is a postpetition debt that is not subject to the claim bar date for prepetition claims and is allowable under Section 1305 as a postpetition claim. This position is meritless. The term "claim," broadly defined in the Bankruptcy Code includes a "right to payment, whether . . . liquidated, unliquidated . . . contingent, matured, unmatured . . . secured, or unsecured." 11 U.S.C. § 101 (5)(A). The existence of a claim is determined by state law. *Raleigh v. Illinois Dept. of Revenue,* 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). The BANK concedes that the DEBTORS' loan

obligation, and thus the BANK'S right to payment, came into existence on May 1, 2003, more than two years before bankruptcy.

Section 506(a) provides for the bifurcation of an undersecured claim into a secured component and an unsecured component. *Associates Commercial Corp. v. Rash,* 520 U.S. at 961. When a judicial determination is made pursuant to § 506(a) that splits an undersecured claim into a secured component and an unsecured component, that determination does not create two new claims that arise at the time of bifurcation – it merely divides the preexisting claim into two parts for purposes of administration in bankruptcy. The bifurcation process has nothing at all to do with determining when a claim arises and it most certainly does not support the inventive proposition that a deficiency claim on a prepetition, undersecured debt is deemed to come into existence only when the amount of the deficiency is established.

## 6. Collection of deficiency is stayed.

The BANK makes a final argument, astonishing in its temerity, that since it previously obtained stay relief, it may now ignore the ongoing Chapter 13 bankruptcy case entirely, sue the DEBTORS in state court and collect the deficiency there. In support of its argument, the BANK misrepresents the applicability of two opinions, *U.S. v. Meyer,* 2004 WL 2203403 (N.D.Ill. 2004) and *In re Wright,* 300 B.R. 453 (Bankr.N.D.Ill. 2003). These opinions address Chapter 13 cases where the debtors used an incorrect address for a creditor causing the creditor not to receive notice of the bankruptcy filing or the claim bar date. Without notice of the case, a creditor's claim is not "provided for" under Section 1328 and is not subject to discharge. *See In re Hairopoulous,* 118 F.3d 1240 (8th Cir. 1997). Under

17

those circumstances, grounds for stay relief may exist to allow such a creditor to sue the debtor in state court, even during the Chapter 13 case, to collect the unprovided for debt from assets not necessary to the debtor's performance of the plan.

In the case at bar, however, the BANK was properly scheduled and received notice. Its claim is thus "provided for" by the Plan and subject to discharge if the DEBTORS complete the Plan and receive a discharge. *See In re Massa,* 187 F.3d 292 (2nd Cir. 1999). The BANK'S failure to file a timely proof of claim does not change its status as a creditor "provided for" by the Plan. Neither does such failure accord the BANK a basis to obtain stay relief to collect its unsecured, dischargeable deficiency claim.

Moreover, the stay relief motion filed by the BANK in this case was for the sole purpose of recovering possession of and selling the motor home in enforcement of its security interest; no request was made to be allowed to sue for and collect any deficiency. Likewise, the relief awarded in the order is expressly limited to enforcement of the security interest and liquidation of the property. The prior modification of the automatic stay does not give the BANK free reign to sue for and collect the unsecured deficiency balance, a debt that is dischargeable in this Chapter 13 case.

## CONCLUSION

The proof of claim filed by the BANK for an unsecured deficiency balance was untimely and no previous claim had been filed. Thus, the claim cannot be considered as an amended claim that relates back to an earlier, timely claim. The BANK'S arguments for various equitable exceptions to strict enforcement of the claim bar date must be rejected in light of the Seventh Circuit's decision in *Greenig*. The motion for relief from the automatic

stay filed by the BANK will not be deemed an informal proof of claim. The Trustee's objection will be sustained and the proof of claim filed by the BANK will be denied.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###